**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTINA ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:12-cv-556 |
| | ) | |
| v. | ) | |
| | ) | Judge Mark R. Hornak |
| MACY'S, INC., MACY'S EAST, & | ) | |
| MACY'S CENTRAL, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

Christina Anderson ("Anderson") filed this suit under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), alleging that she is a disabled person under that statute and that Defendants' retail stores are public accommodations under the ADA which fail to comply with ADA standards by what she considered to be negatively disparate product placement and pricing of "plus-sized" women's clothing.[1]

Before the Court is a Motion filed by Defendants Macy's Incorporated, Macy's East, and Macy's Central (collectively "Macy's"), to dismiss all of her claims for lack of standing on her part to bring them, and for a failure to state a claim. The Court has considered the parties' moving, opposition and reply papers, and for the reasons that follow, the Court grants Defendant's Motion to Dismiss for lack of standing, without prejudice. Plaintiff shall be allotted 30 days from the date of this Opinion and accompanying Order to file an Amended Complaint supporting the factual and legal basis for her individual standing to prosecute the claim that will

---

[1] Anderson has filed a parallel suit containing essentially identical claims against another clothing retailer at Civ. Action 12-cv-822.

remain in this action, consistent with this Opinion. In that regard, after conducting the review mandated by 28 U.S.C. § 1915, the Court further concludes that Anderson's Amended Complaint fails to state a claim for relief under Title III of the ADA, except to the extent that she seeks injunctive and/or declaratory relief due to Macy's alleged failure to remove certain barriers, 42 U.S.C. § 12182(b)(2)(A)(iv). All claims but that one are dismissed with prejudice, in that any attempted amendment would be futile.

## I. BACKGROUND

In assessing the plausibility of the allegations of Anderson's Amended Complaint, we must take her allegations as true. According to her Amended Complaint, Plaintiff is "disabled" as defined by the ADA, in that she has a qualifying impairment that interferes with a major life function. Am. Compl. ¶¶ 18, 54-59. More specifically, Anderson alleges that she suffers from a thyroid disorder (hypothyroidism), arthritic damage, osteomalacia, hypertension, fibromyalgia, major depression, personality disorder, and anxiety. *Id.* ¶¶ 26-46, 54-59. The Plaintiff alleges that she is obese as a symptom and result of her many health and mental conditions, and as a side effect of her use of a multitude of prescription medications. *Id.* ¶¶ 32-36. Due to her illnesses, Anderson is required to take these nine (9) medications that she says cause or contribute to her obesity. *Id.* ¶¶ 38-45, 58. Anderson alleges that her obesity is a part of her disabling condition and that it substantially limits major life activities, including walking, standing, sitting, reaching, lifting, bending, and working. *Id.* ¶¶ 56-59.

On or about December 15, 2010, Anderson was shopping in the women's intimates and nightwear department at a Macy's store in the Frazer Heights Galleria located in Tarentum,

2

Pennsylvania. *Id.* ¶¶ 60-61. When Anderson went to purchase a plus-sized[2] nightgown that she thought was on sale, she was told that the "petites and average size items were on sale but the larger sizes" were at the regular price even though the items were otherwise "identical" in that they were made by the same manufacturer, of the same fabric, as well as being the same color and style. *Id.* ¶¶ 62-66. Plaintiff then spoke with the store supervisor who confirmed that the stated pricing was accurate. *Id.* ¶¶ 67-69. After Anderson complained that she thought the situation was discriminatory, the supervisor "stated that the larger sizes are always listed at a higher price" but ultimately gave Anderson the sale discount on her purchase. *Id.* ¶¶ 70-72. This situation caused Anderson great embarrassment and she did not return to the Frazer Heights Galleria store in the months following the incident. *Id.* ¶¶ 73-74.

Plaintiff later shopped at the Macy's in Monroeville Mall in Monroeville, Pennsylvania where she noticed that identical brands of clothing in the average and petite sizes were less expensive than plus-size clothing. *Id.* ¶¶ 75-78. Further, the smaller clothing sizes were often on sale, but the identical plus-size clothing was not. *Id.* ¶ 79. The Plaintiff asked a sales clerk about the higher prices for plus-sized clothing, and the clerk said that the extra cost was due to the additional fabric costs associated with making larger clothing. *Id.* ¶ 81. However, when Anderson asked why petite sizes were not less expensive than average clothing that is larger and requires more material, the clerk did not answer and walked away. *Id.*

From August 18, 2011 through April 12, 2012, Plaintiff says that she visited and surveyed numerous other Macy's stores. *Id.* ¶ 82. In Pennsylvania she visited stores in

---

[2] In common parlance, "plus-size clothing" refers to "clothing proportioned specifically for overweight people." Wikipedia, Plus-Size Clothing, http://en.wikipedia.org/wiki/Plus_size_clothing (last visited April 30, 2013). According to the Macys.com website, the retailer offers plus size clothing in sizes that range from 14W-24W. Macy's, Does Macy's Offer Plus Size Clothing Online?, https://customerservice.macys.com/app/answers/detail/a_id/64/kw/plus%20size (last visited April 16, 2013).

Monroeville, Monaca, West Mifflin, downtown Pittsburgh, Tarentum, Altoona, Monroeville, Robinson Town Center, Ross Park Mall, Hermitage, South Hills Village Mall, Washington, Homestead, and Greensburg. *Id.* She also visited stores in Niles, Steubenville, Clairsville, and Youngstown in Ohio. *Id.*

In addition to higher prices, Anderson also alleges that the plus-sized clothing section at Macy's is "segregated" from the smaller-sized clothing sections. *Id.* ¶ 90. Anderson alleges that the plus-sized clothing in some stores is placed on an entirely different level of the store than all the other women's clothing, *id.* ¶ 94, and, in some instances, is located "as far removed as possible" from the smaller sizes. *Id.* ¶¶ 96-97. Because the plus-sized department is located in the back, it is "inconvenient" and "more difficult to reach in that it is much farther from main entrances." *Id.* ¶¶ 113-19. The Plaintiff alleges that these decisions appeared to be "maliciously chosen since there was no reasonable explanation for the segregation." *Id.* ¶ 91.

Anderson further alleges that accessory items such as jewelry, cosmetics, fragrances, and other "departments that might be of interest to women" are placed farther away from the plus-sized clothing section, but located conveniently near the smaller clothing sizes. *Id.* ¶¶ 102-106. She notes that placement of the plus-sized department away from other sections, such as shoes and jewelry, but close to bedding, kitchen ware, public restrooms, and staff lounges is "insulting" and "inconvenient." *Id.* ¶¶ 102-12, 119-20. Anderson also alleges that the space between the aisles in the plus-size clothing section is narrower than other sections, which makes it difficult for people with her disability to shop. *Id.* ¶ 121. Finally, Anderson purports that the space allocated to and selection of clothing for people with her disability is considerably smaller than the selection for non-disabled customers. *Id.* ¶¶ 122-23.

In her Amended Complaint, Anderson alleges that Macy's stores are public accommodations that employ practices that violate Title III of the ADA in that they impose an illegal surcharge by charging higher prices for items based on their size, and provide separate and unequal benefits to disabled persons because the plus-sized department is in a different, less preferable part of the store than other women's clothing, is smaller than other departments, and is laid out in a way that makes it difficult for obese people to maneuver in them. *Id.* ¶¶ 83-125. Anderson seeks declaratory and injunctive relief as well as monetary damages and a civil penalty. *Id.* at pp. 19-20.

Plaintiff's Motion for Leave to Proceed *in forma pauperis* ("IFP") was granted on August 2, 2012. ECF No. 3.[3] Anderson filed an Amended Complaint on September 5, 2012. Am. Compl.; ECF No. 5. Defendants filed a Motion to Dismiss the Amended Complaint on October 3, 2012. ECF Nos. 7, 10. Plaintiff filed a Response, ECF No. 12, Defendant filed a Reply, ECF No. 13, and Plaintiff filed a Sur-Reply. ECF No. 14.

## II. STANDARD

### A. *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972); *Brown v. City of Long Branch,* 380 F. App'x 235, 238 (3d Cir. 2010) ("*Pro se* complaints, however, must be 'liberally construed' and 'held to less stringent standards than formal pleadings

---

[3] In that Order, the Court dismissed 12 of the listed defendants for failure to state a claim and noted that the "Court expresses no opinions as to whether the allegations against [Macy's] will ultimately get past a motion to dismiss." ECF No. 2 at 8-9.

drafted by lawyers[.]'" (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.[4]

## B. Motion to Dismiss Pursuant to 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "The District Court must accept the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. In short, a motion to dismiss should be granted if a party does not allege facts which could, if established at trial, entitle him to relief. *See Fowler,* 578 F.3d at 211.

## C. *In Forma Pauperis* Litigants

"Although Section 1915 refers to 'prisoners', Federal courts apply Section 1915 to non-prisoner IFP applications." *Hickson v. Mauro,* No. 11-6304 NLH, 2011 WL 6001088, at *1 (D.N.J. Nov. 30, 2011). Under 28 U.S.C. § 1915(e)(2), when a plaintiff (such as Plaintiff) proceeds *in forma pauperis*, "the court shall dismiss the case at any time" if it determines that certain conditions are met, including that the plaintiff "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). Section 1915 obligates this Court to independently examine all IFP cases, and does so by applying the same standard as motions to dismiss under

---

[4] Anderson's pleadings are anything but inartful. They are literate, logical, replete with statutory and regulatory references, and look like they were prepared with the help of a lawyer, and a good one at that. If Ms. Anderson prepared them on her own, more power to her. If a lawyer helped Anderson with them, he or she needs to enter their appearance on her behalf, as "ghostwriting" is not permitted. *Snyder v. Daugherty,* No. 2:11-CV-00879, 2012 WL 4506577, at *19 (W.D. Pa. Sept. 28, 2012); *see also Delso v. Trustees For Ret. Plan For Hourly Emps. of Merck & Co., Inc.,* No. 04-3009 AET, 2007 WL 766349, *15-16 (D.N.J. Mar. 6, 2007). This admonition is a one-time only "free pass" for any such counsel to now step forward.

Federal Rule of Civil Procedure 12(b)(6).[5] *Sowemimo v. Thomas*, No. 09-639, 2009 WL 3806737, at *2 (W.D. Pa. Nov. 13, 2009) ("In performing a court's mandated function of *sua sponte* reviewing complaints under 28 U.S.C. § 1915(e) to determine if they fail to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).").

> In reviewing complaints as mandated by 28 U.S.C. § 1915(e) and, consequently, utilizing the standards for a 12(b)(6) motion to dismiss, the complaint must be read in the light most favorable to the Plaintiff and all well-pleaded, material allegations of fact in the complaint must be taken as true. . . . However, the court need not accept as true any legal averments or conclusions contained in the complaint. . . . Neither does the court have to accept as true any allegations of fact in the complaint which contradicts facts of which the court may take judicial notice. . . . Furthermore, because Plaintiff is *pro se*, courts accord an even more liberal reading of the complaint, employing less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney.

*Id.* at 3-4 (citations omitted).

### III. DISCUSSION

Plaintiff alleges that Defendants own and operate Macy's stores and that they have discriminated against her as a disabled person who has physiological disorders underlying her obesity. However, the Court must also satisfy itself that Plaintiff has standing to bring the suit in the first instance. Accordingly, the Court first turns to an inquiry into Plaintiff's standing to sue for declaratory and injunctive relief under the ADA.

---

[5] 28 U.S.C. § 1915(e) provides:
  (e)(1) The court may request an attorney to represent any person unable to afford counsel.
  (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
  (A) the allegation of poverty is untrue; or
  (B) the action or appeal--
  (i) is frivolous or malicious;
  (ii) fails to state a claim on which relief may be granted; or
  (iii) seeks monetary relief against a defendant who is immune from such relief.

## A. Standing

"In order to set forth a viable claim in federal court, a plaintiff is required to satisfy both the Article III constitutional minimum of a 'case or controversy' and any prudential considerations set by the courts." *Disabled Patriots of Am., Inc. v. City of Trenton*, No. 07 CV 3165(FLW), 2008 WL 4416459, at *2 (D.N.J. Sept. 24, 2008); *see also Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997) ("Standing is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution.").

The Supreme Court has held that in order "to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *see also Doe v. Nat'l Bd. of Med. Examiners*, 210 F. App'x 157, 159 (3d Cir. 2006). "Standing also encompasses a prudential component whereby courts decline to exercise jurisdiction over litigants attempting to assert the rights of another, claiming generalized grievances more appropriately addressed in the representative branches, or where a litigant's complaint falls without the zone of interests protected by the law invoked." *Dempsey v. Pistol Pete's Beef N Beer, LLC*, No. 08-5454RBKAMD, 2009 WL 3584597, at *4 (D.N.J. Oct. 26, 2009) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)). The party invoking federal jurisdiction bears the burden of establishing standing "in the same way as any other matter on which the

plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

Under Title III of the ADA, private plaintiffs may not obtain monetary damages and therefore only prospective injunctive relief is available. *Reviello v. Phila. Fed. Credit Union*, No. 12-508, 2012 WL 2196320, at *4 (E.D. Pa. June 14, 2012). Anderson's requests for monetary damages and a civil penalty are therefore improper, and will be dismissed with prejudice. Am. Compl. at 19-20. Anderson, however, may seek injunctive relief. *Id.*

Because the remedy for a private ADA Title III violation is injunctive relief, courts look beyond the alleged past violation and consider the possibility of future violations. Plaintiffs seeking prospective injunctive relief "must demonstrate a 'real and immediate threat' of injury in order to satisfy the 'injury in fact' requirement." *Access 4 All, Inc. v. Absecon Hospitality Corp.*, No. 04-6060 JEI, 2006 WL 3109966, at *5 (D.N.J. Oct. 30, 2006) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 103-04 (1983)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974); *see also Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987) (same). The parties here dispute whether Plaintiff has sufficiently alleged the first element of standing -- an injury-in-fact.

In Title III ADA cases in which disabled plaintiffs bring suit seeking an injunction to cure discriminatory practices, courts generally look to four factors to determine the likelihood of the plaintiff returning to the place of the alleged ADA violation, and therefore whether the threat of injury is concrete and particularized: "(1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel." *Harty v. Burlington Coat*

*Factory of Pa., L.L.C.*, No. 11-01923, 2011 WL 2415169, at *4 (E.D. Pa. June 16, 2011). "The four-factor test is one of totality, and a finding in favor of [the plaintiff] does not require alignment of all four factors." *Id.* at *7.

Macy's argues that many of the stores that Plaintiff named are too distant from her and that Anderson's alleged patronage is insufficient to establish standing. Defendants also argue that Plaintiff fails to plead frequency of travel near the stores and a specific intent to return to the properties she cites to in order to fulfill the injury-in-fact prong of the standing analysis.

First, in regard to proximity, "as the distance between a plaintiff's residence and a public accommodation increases, the potential for the occurrence of future harms decreases." *Molski v. Kahn Winery*, 405 F. Supp. 2d 1160, 1163-64 (C.D. Cal. 2005). While the proximity standard is not clear cut, courts have for instance held that a distance of over 100 miles fails to satisfy this prong. *Trenton*, 2008 WL 4416459, at *4. Anderson claims that she visited 17 Macy's stores which employ discriminatory policies, and these stores range from less than 5 miles to up to 100.6 miles from her residence.[6] Am. Compl. ¶ 82. The Court concludes that it is highly unlikely that Anderson will return to a Macy's store that is 21.7 miles away (the Macy's at Robinson Town Center), let alone 100 miles away (in Altoona, PA), when there is a Macy's located 5 miles from Plaintiff's residence (at Monroeville Mall), and 16 miles away at Frazer.[7] *See Reviello*, 2012 WL 2196320, at *5 (proximity not established when plaintiff lived over fifty (50) miles from complained of public accommodation when another one was located within three miles of his house). This is particularly so in that Plaintiff was actually shopping at the stores at

---

[6] The distance between the Plaintiff's residence and a Macy's store was determined by the shortest possible driving route using Mapquest (http://www.mapquest.com) and not "as the crow flies."

[7] Four (4) other stores are closer to her home than the one at Frazer (Waterfront – 7.4 miles; Downtown Pittsburgh – 10.1 miles; Century III Mall – 13.2 miles; Ross Park Mall – 15.1 miles), but she does not allege that she ever shopped at any of them, or that she plans to.

Frazer and Monroeville, and "surveying" at all the others. Without much more, there is no basis to conclude that it is at all plausible that Plaintiff's distant proximity to the majority of the Macy's stores she references may establish a likely intent to return to any of them, at least as to the ones she has not actually shopped.

The second standing factor considers a plaintiff's past patronage of Defendants' places of public accommodation to support her likelihood of return and future harm. From the face of the Amended Complaint it is not evident that Anderson has visited any of the listed stores more than once, and does not indicate that her trip to 15 of the 17 stores was for any purpose other than to "survey" them.[8] She only alleges that she purchased one item (a nightgown) from the Macy's store at Frazer Heights.[9] When a plaintiff visits a public accommodation "only once, the lack of a history of past patronage seems to negate the possibility of future injury at [that] particular location." *Molski*, 405 F. Supp. 2d at 1164. However, this presumption does not apply where the plaintiff can establish a more personalized connection to the establishment. *Id.*; *Trenton*, 2008 WL 441645, at *5. Moreover, Anderson alleges that the Macy's stores' layout and pricing are based on corporate policy which violates the ADA, and therefore all of the stores are similarly situated. Compl. ¶¶ 84, 86, 90, 92-94, 96-97, 105, 115. *See Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 343 n.11 (D.N.J. 2003) ("If, on the other hand, there existed an allegation that all Burger King restaurants are similar, in that they . . . implement a corporate policy violative of the

---

[8] Anderson argues in her Sur-Reply that she "has been shopping at several different Macy's stores since approximately 2006." ECF No. 14 ¶ 3. However, Anderson cannot be deemed to amend her Complaint with facts alleged in her opposition papers. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

[9] The Court notes that Plaintiff alleges that she was ultimately given the same sales discount for this item as was being offered for the smaller sizes, revealing that as to that episode, she suffered no injury at all. Am. Compl. ¶ 71.

ADA, Clark may have standing as to restaurants he has yet to visit.)[10]; *Harty*, 2011 WL 2415169, at *7 ("one-time visit" satisfied patronage factor because ADA provides that a person with a disability is not required to "participate in a futile gesture" if plaintiff has actual knowledge that the defendant does not intend to comply with ADA provisions). Thus, while Anderson's only one-off visits to most of the involved Macy's stores does not, standing alone, obviate this factor at the pleading stage, her very limited contact with them does not carry it across the goal line.

Third, and of great importance, is a plaintiff's plan to return to the place of accommodation. "[T]he plaintiff must put forth a definitive, uncontested intent to return before filing the complaint to establish standing." *Trenton*, 2008 WL 4416459, at *6. A plaintiff's intention to return to defendant's place of public accommodation "'some day' . . . without any description of concrete plans, or indeed even any specification of *when* the some day will be-do not support a finding of the" requisite actual or imminent injury. *Lujan*, 504 U.S. at 564. A plaintiff's general allegation of a desire to return is essentially the equivalent of pleading to return "some day." *Dempsey*, 2009 WL 3584597, at *5. Anderson alleges in her Complaint no facts that evidence a definitive plan to return to any of the stores, especially those beyond the two (2) stores where she actually shopped, and therefore fails to satisfy this factor.[11] *See id.* at *5 (plaintiff fails to allege "sufficient facts to demonstrate that he suffers from a real and immediate

---

[10] However, as discussed below and similar to *Clark*, Anderson fails to demonstrate an intent to return to, or a likelihood of future injury at, any of the listed Macy's stores. Therefore, even alleging that Macy's implements a corporate policy that is violative of the ADA is not sufficient to establish standing.

[11] In her Response to Macy's Motion to Dismiss, Anderson argues that because the goods and services "are necessities of life", she "will shop for clothing at a rate similar to any other person" and that "a reasonable person may assume that injury will occur over and over." ECF No. 12 at 3. Given that "necessities of life" may be purchased at any one of a broad spectrum of brick-and-mortar or on-line retailers, an assumption that she *must* return to any Macy's is without real-world support, and Anderson fails to state that she intends to or will return to any of these specific Macy's stores. Furthermore, these "necessities" allegations are not contained in her Complaint, and Anderson cannot amend her Complaint by alleging facts in her opposition papers. *Pension Ben.*, 998 F.2d at 1196.

threat of injury" because he does not allege that he will ever return to the defendant's place of public accommodation).

Finally, Anderson fails to plead any facts showing her frequency of travel in the areas of the listed stores. While the Court might presume at the *pro se* pleading stage that Plaintiff travels frequently in the area of the Macy's in Monroeville because her residence is less than five (5) miles away, the Court is unable to make the same presumption for those ten (10) stores which are twenty (20) miles and more away from her home. Moreover, Plaintiff fails to plead facts that would demonstrate either a preexisting business or familial tie within the areas of any of the Macy's which lie further than the Monroeville store from her residence. *Harty*, 2011 WL 2415169, at \*9 (frequency of nearby travel sufficient where plaintiff alleged that he traveled to city "to attend gun shows and to maintain his business and client contacts."); *see also Wilson v. Costco Wholesale Corp.*, 426 F. Supp. 2d 1115, 1122 (S.D. Cal. 2006) ("fact that Plaintiff travels to San Diego at least three or four times a year also cannot establish standing.").

Considering all of these factors, the Court finds that Plaintiff's Amended Complaint does not sufficiently allege an injury-in-fact to establish that she has standing to assert her claims. The failure to allege a definite plan to return as well as the other factors "is more than one of mere form as without this information the Court is unable to evaluate the likelihood that Plaintiff will, in fact, return" to Defendants' stores. *Dempsey*, 2009 WL 3584597, at \*5; *see also Reviello*, 2012 WL 2196320, at \*5 (while "[a]t the pleading stage, it is not in the province of the judge to decide the credibility of the plaintiff's stated intent to return. . . . Dismissal is appropriate, however, where, as here, plaintiff makes no allegations to support a finding of an intent to return.").

Because the allegations in Plaintiff's Amended Complaint are insufficient to satisfy the injury-in-fact requirement, the Court finds that Anderson has not carried her burden of demonstrating that she has standing to prosecute these claims.[12] In order to determine whether allowing her to file yet another amended complaint to attempt to fill in these standing gaps would be futile, the Court finds it prudent to consider the parties' arguments regarding the Motion to Dismiss for failure to state a claim.[13] *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-14 (3d Cir. 2002). Because one of her claims appears to surmount the rather low Motion to Dismiss bar, the Court will give Anderson thirty (30) days to file an Amended Complaint consistent with this Opinion to demonstrate her standing. In that regard, Anderson will be required to delineate the specific circumstances as to when, why, and how she would return to each of the seventeen

---

[12] Whether a plaintiff may satisfy the intent to return requirement if she visits the establishment *solely* as a tester has not been addressed head-on by the Third Circuit. *Trenton*, 2008 WL 4416459, at *3, n.2; *see also Harty*, 2011 WL 2415169, *1, n.5 ("Testers are qualified individuals with disabilities who visit places of public accommodation to determine their compliance with Title III."). Some Courts allow for tester standing under the ADA. *Tandy v. City of Wichita*, 380 F.3d 1277, 1287 (10th Cir. 2004) ("testers have standing to sue under *Title II* of the ADA.") (emphasis added); *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1069 (9th Cir. 2009) ("we accord standing to individuals who sue defendants that fail to provide access to the disabled in public accommodation as required by the Americans with Disabilities Act, even if we suspect that such plaintiffs are hunting for violations just to file lawsuits."); *Betancourt v. Federated Dept. Stores*, 732 F. Supp. 2d 693, 710 (W.D. Tex. 2010) ("Thus, a disabled tester who experiences the discrimination prohibited by the ADA has standing to seek relief."). *Cf. Norkunas v. Seahorse NB, LLC*, 444 F. App'x 412, 415 n.3 (11th Cir. 2011) (noting that the 11th Circuit has never addressed "tester standing" under the ADA and deciding to "not address 'tester standing' here."); *Norkunas v. Park Rd. Shopping Ctr., Inc.*, 777 F. Supp. 2d 998, 1005 (W.D.N.C. 2011) (with regard to tester standing, "the naked assertion of a desire to return to a defendant establishment for the sole purpose of confirming ADA-compliance, without more, is insufficient to establish standing."); *Kramer v. Midamco*, 656 F. Supp. 2d 740, 747-48 (N.D. Ohio 2009) ("a plaintiff's claim that she visited the facility as a tester and intends to visit the Facility to 'verify its compliance or non-compliance with the ADA, does little to support [her] allegation that [s]he is truly threatened by an immediate future injury. . . . [An] ADA plaintiff cannot manufacture standing to sue in a federal court by simply claiming that [s]he intends to return to the Facility.") (citations and quotation marks omitted).

   The Court concludes that it would be improvident to decide the substantial issue of "tester" standing under Title III of the ADA in this case as it now stands. While the surviving claim in this case may be important to affected individuals, its scope is quite modest. Any injunctive relief granted in this case would relate solely to the width of the aisles within the Macy's stores. Moreover, in her response papers, Anderson alleges that she has a history of being a Macy's customer. Assuming that Plaintiff will sufficiently allege and support this assertion in her next Amended Complaint, as well as other necessary appropriate factual elements, pleading those facts may be sufficient to demonstrate standing as a customer, obviating any necessity to consider "tester" standing in this context.

[13] As noted above, the Court also has a continuing duty to independently examine all IFP cases to determine if they fail to state a claim under 28 U.S.C. § 1915(e).

(17) specific Macy's stores that she has identified, all subject to the good faith pleading standard of Fed. R. Civ. P. 11.[14]

## B. Failure to State a Claim

Title III of the ADA prohibits disability discrimination in places of public accommodation, and sets forth as a "general rule" that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). In studying the need for such legislation, Congress found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress noted that the many forms such discrimination takes include "outright intentional exclusion" as well as the "failure to make modifications to existing facilities and practices." 42 U.S.C. § 12101(a)(5).

To state a claim under Title III of the ADA, a plaintiff must show "(1) discrimination on the basis of a disability; (2) in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation; (3) by the public accommodation's owner, lessor or operator." *Harty*, 2011 WL 2415169, at *9.

The primary bone of contention between the parties is whether Plaintiff has adequately pled "discrimination on the basis of a disability . . . in the full and equal enjoyment" of a public

---

[14] Anderson's standing showing under each of the factors noted above falls demonstrably short. No matter the sincerity of her belief that she was injured as alleged, under the applicable legal tests, she has a lot of pleading ground to make up as to standing in order to maintain this action.

accommodation.[15] While Macy's does not argue that Plaintiff is not disabled as defined by the ADA, the Court must consider this issue in order to determine if allowing another amended complaint would be futile.

### 1. Obesity as a Disability

The Third Circuit has yet to decide if obesity is a disability under the ADA. However, lower courts in our Circuit have suggested that obesity caused by an underlying physiological disorder is a disability under the ADA. *See Lescoe v. Pa. Dept. of Corrs. SCI-Frackville*, 464 F. App'x 50, 53 (3d Cir. 2012) ("this Court has not definitively reached a position regarding whether obesity is a disability under the ADA that limits a major life activity"); *Ni v. Rite Aid of N.J.*, No. 10-1522, 2010 WL 2557523, at *3 (D.N.J. June 22, 2010) (noting that obesity is not considered a disability except for in the rare instances in which it is caused by a physiological disorder); *Marsh v. Sunoco, Inc.*, No. 06-CV-2856, 2006 WL 3589053, at *4 (E.D. Pa. Dec. 6, 2006) ("It repeatedly has been held that excess weight or obesity, except in special instances where they relate to a physiological disorder, are not 'physical impairments' within the meaning of the statutes.").[16]

---

[15] Macy's also does not contest that its stores are places of public accommodation. *See* 28 C.F.R. § 36.104 ("Place of public accommodation means a facility operated by a private entity whose operations affect commerce and fall within at least one of the following categories-- . . . (5) A bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment. . .").

[16] Other Circuits have held that obesity caused by an underlying physiological condition is a disability under the ADA. *See E.E.O.C. v. Watkins Motor Lines, Inc.*, 463 F.3d 436, 441 (6th Cir. 2006) (holding that non-physiological morbid obesity is not an impairment under the ADA, but morbid obesity caused by a physiological disorder may be an ADA impairment); *Cook v. State of Rhode Island, Dep't of Mental Health, Retardation, & Hosps.*, 10 F.3d 17 (1st Cir. 1993) (court finding an ADA impairment where an obese woman established through expert testimony that her obesity was caused by a physiological condition); *Francis v. City of Meriden*, 129 F.3d 281, 286 (2d Cir. 1997) (holding, under the ADA, "obesity, except in special cases where the obesity relates to a physiological disorder, is not a 'physical impairment' within the meaning of the statutes"). *Cf. E.E.O.C. v. Res. for Human Dev., Inc.*, 827 F. Supp. 2d 688, 693-94 (E.D. La. 2011) (holding that severe obesity was disability under ADA and did not require proof of physiological basis, and that "a physiological cause is only required when a charging party's weight is within the normal range").

However, Congress amended the ADA by passing the ADA Amendments Act of 2008 ("ADAAA"). ADA Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553 (2008).[17] Congress did this in order to reinstate broad ADA coverage of individuals because of its conclusion that the Supreme Court in *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 185 (2002) and *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 499 (1999), had improvidently narrowed the scope of protection intended to be afforded in the ADA. ADAAA, 122 Stat. 3553. Congress thus instructed the courts that they were interpreting the statute too restrictively. *Id*; *see also Lowe v. Am. Eurocopter, LLC,* No. 1:10CV24-A-D, 2010 WL 5232523, at *7 (N.D. Miss. Dec. 16, 2010) ("The ADAAA appears to have legislatively pre-empted the Supreme Court's past definitions of 'substantially limits,' stating that the Court's standard was 'too high,' and that 'substantially limits' should be more broadly interpreted."). For instance, "Congress explicitly rejected *Toyota* and *Sutton* in an effort to promote a less restrictive interpretation of 'disability' under the ADA." *Fleck v. WILMAC Corp.,* No. 10-05562, 2011 WL 1899198, at *5 (E.D. Pa. May 19, 2011).

Under the ADA, as amended by the ADAAA, a disability is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).[18] In drafting Title III, Congress painted with a broad brush and then directed

---

[17] These amendments have already taken effect and therefore the language of the ADA (in the U.S. Code) has been modified to reflect these changes.

[18] The ADA details a non-exhaustive list of what constitutes a major life activity. Furthermore, with the implementation of the ADAAA, major bodily function limitations are now considered a major life activity. The ADA defines major life activities to include:

> (A) In general. For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

the Attorney General to promulgate regulations to implement the law. 42 U.S.C. § 12186(b).[19]

The Regulations define a physical or mental impairment as:

> (i) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin; and endocrine;
> (ii) Any mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities . . .

28 C.F.R. § 36.104.

This Court is unaware of any district court in our Circuit that has decided whether obesity may be considered a disability under the ADA as amended by the ADAAA. Other courts have held that obesity may be a disability under the ADAAA. *See Lowe*, 2010 WL 5232523, at *6 ("the Court is unable to say that obesity can never be a disability under the ADA, especially given" the ADAAA); *BNSF Ry. Co. v. Feit*, 281 P.3d 225, 231 (Mont. 2012) (holding that the state's Human Rights Act was to be interpreted consistently with federal discrimination laws, and concluding that, under the ADAAA, "[o]besity that is not the symptom of a physiological disorder or condition may constitute a 'physical or mental impairment' within the meaning of Montana Code Annotated § 49–2–101(19)(a) if the individual's weight is outside 'normal range' and affects 'one or more body systems' as defined in 29 C.F.R. § 1630.2(h)(1).").

Considering court decisions both before and after the ADAAA[20] in conjunction with Congress's intent to broaden the scope of the definition of a disability through the Amendment,

---

(B) Major bodily functions. For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

42 U.S.C. § 12102(2).

[19] These regulations are found at 28 C.F.R. Ch. I, §§ 36.101 *et seq.* ("Regulations").

for purposes of the matters now before the Court, we cannot definitionally exclude obesity when caused by an underlying physiological condition as a disability under the ADA, and therefore treat it as such.[21]

## 2. Count I – Alleged Improper Surcharge

In Count I of her Amended Complaint, Anderson alleges that Macy's stores acted discriminatorily in violation of 28 C.F.R. § 36.301(c) by effectively imposing a "surcharge" on women's plus-sized clothing items. Am. Compl. ¶¶ 83-87. Subsection 28 C.F.R. § 36.301(c) states:

> (c) Charges. A public accommodation may not impose a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids, barrier removal, alternatives to barrier removal, and reasonable modifications in policies, practices, or procedures, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part.

Moreover, with regard to this section, the ADA Title III Technical Assistance Manual explains that "[a]lthough compliance may result in some additional cost, a public accommodation may not place a surcharge only on particular individuals with disabilities or groups of individuals with disabilities to cover these expenses." § III-4.1400 Surcharges.

In order to evaluate whether a cost constitutes a surcharge that violates Title III of the ADA, a court considers whether it (1) is used to cover the costs of ADA-mandated measures and (2) is really a surcharge (a charge that nondisabled people would not incur). *See Dare v. Ca.*, 191 F.3d 1167, 1171 (9th Cir. 1999) (two-part inquiry to determine whether a fee violates Title II of

---

[20] Because Congress intended to broaden the scope of what is considered a disability under the ADA through its Amendment, the Court finds no reason to believe that courts which recognized obesity with an underlying physiological condition as a disability prior to the ADAAA would reverse gears in light of the Amendment.

[21] Because Plaintiff specifically alleges that she has a physiological condition(s) that causes her obesity, the Court need not decide if obesity or morbid obesity without an underlying physiological disorder is also a disability under the ADAAA.

the ADA -- (1) whether the measure for which the fee is levied is mandated by the ADA and (2) whether the fee constitutes a charge that nondisabled people would not incur); *Duprey v. State of Conn., Dept. of Motor Vehicles*, 28 F. Supp. 2d 702, 706 (D. Conn. 1998) (the following elements must be plead to be a violative surcharge "(1) that the [fee] constitutes a surcharge; (2) that the fee is imposed only on disabled persons; and (3) that the fee is used to cover the costs of ADA-mandated measures.").[22]

Plaintiff's claim fails to meet either prong. First, Macy's is not required to carry plus-sized clothing at all. The Supreme Court explained that:

> [t]he ADA requires covered businesses to make such reasonable modifications of "policies, practices, or procedures" as are necessary to "afford" goods, services, and privileges to individuals with disabilities; but it explicitly does not require "modifications [that] would fundamentally alter the nature" of the goods, services, and privileges. § 12182(b)(2)(A)(ii). In other words, disabled individuals must be given *access* to the same goods, services, and privileges that others enjoy. The regulations state that Title III "does not require a public accommodation to alter its inventory to include accessible or special goods with accessibility features that are designed for, or facilitate use by, individuals with disabilities." 28 CFR § 36.307 (2000).

---

[22] The Court recognizes that these cases consider violations of 28 C.F.R. § 35.130(f) which corresponds to Title II of the ADA, whereas Anderson alleges a violation of 28 C.F.R. § 36.301(c) which corresponds to Title III of the ADA. Title II prohibits "public entities" from excluding disabled individuals from or denying them the benefits of programs, activities, or services, and from otherwise discriminating against them. *See* 42 U.S.C. § 12132. Title III prohibits discrimination or the denial of "full and equal enjoyment" of goods, services, and other benefits provided by "places of public accommodation" operated by private entities. *See* 42 U.S.C. §§ 12182. The substantive language of 28 C.F.R. § 35.130(f) is nearly identical to that of 28 C.F.R. § 36.301(c). It reads

> (f) A public entity may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids or program accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part.

28 C.F.R. § 35.130. *See also PGA Tour, Inc. v. Martin*, 532 U.S. 661, 681 (2001) (comparing analysis in Title III to "analogous context of Title II."); *Klingler v. Dir., Dept. of Revenue, State of Mo.*, 433 F.3d 1078, 1082 *opinion supplemented on reh'g*, 455 F.3d 888 (8th Cir. 2006) ("[28 C.F.R. § 35.130(f)] does not distinguish between Title II and Title III obligations, but prohibits public entities from singling out the disabled to pay the cost of any ADA compliance efforts.").

*PGA Tour, Inc. v. Martin*, 532 U.S. 661, 698 (2001).[23] *See also Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613 (3d Cir. 1998) ("The purpose of the ADA's public accommodations requirements is to ensure accessibility to the goods offered by a public accommodation, not to alter the nature or mix of goods that the public accommodation has typically provided. In other words, a bookstore, for example, must make its facilities and sales operations accessible to individuals with disabilities, but is not required to stock Brailled or large print books. . . . likewise an insurance office must be physically accessible to the disabled but need not provide insurance that treats the disabled equally with the non-disabled."); *Ariz. ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 671 (9th Cir. 2010) ("whatever goods or services the place provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods and services. This language does not require provision of different goods or services, just nondiscriminatory enjoyment of those that are provided."). If the measure is "not required under the ADA, the inquiry ends" because the regulation only forbids surcharges for ADA "required" measures. *Dare*, 191 F.3d at 1171.

Secondly, the alleged higher cost of plus-sized goods here is not a "surcharge" because it is not imposed only on disabled persons. There are no allegations that disabled persons are charged a higher price than non-disabled persons for the same plus-sized clothing, or that only disabled persons wear (or even purchase) plus-sized clothing. Macy's argues that its stores sell "plus-sized clothing to all customers at the same prices, regardless of whether the customers are

---

[23] *See also Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 560 (7th Cir. 1999) (Posner, C.J.) ("The common sense of the statute is that the content of the goods or services offered by a place of public accommodation is not regulated. A camera store may not refuse to sell cameras to a disabled person, but it is not required to stock cameras specially designed for such persons. Had Congress purposed to impose so enormous a burden on the retail sector of the economy and so vast a supervisory responsibility on the federal courts, we think it would have made its intention clearer and would at least have imposed some standards. It is hardly a feasible judicial function to decide whether shoestores should sell single shoes to one-legged persons and if so at what price, or how many Braille books the Borders or Barnes and Noble bookstore chains should stock in each of their stores.").

disabled or not disabled." ECF No. 10 at ¶ 12. Plaintiff does not contest this point, and any price difference between plus-sized and other women's clothing is not a "surcharge" defined as being improper in the ADA's regulations. *See also Dare*, 191 F.3d at 1171 ("If nondisabled people pay the same fee for an equivalent service, the charge to disabled people would not constitute a surcharge on a 'required' measure.").

Anderson fails to allege that any purported price differential is a "surcharge" on only disabled persons in order to cover the cost of ADA compliance. The allegations as pled simply fail to allege a violation of the ADA, and because no amendment could change the applicable rule of law, this claim is dismissed with prejudice.

### 3. Counts II and III – Alleged ADA "Separate Benefit" and "Unequal Benefit" Claims

In Counts II and III, Anderson alleges that Macy's violated the ADA's prohibition against a "separate benefit" and that Defendants provided an "unequal benefit" to disabled persons by locating the plus-sized clothing in a separate, and sometimes "isolated", area apart from other adult female clothing as well as away from "other areas of the store that would likely be of interest to women who are shopping for clothing." Am. Compl. ¶¶ 89-125. Secondly, Plaintiff argues that the spacing and "selection of items" offered in the plus-sized section is "much smaller" than the other women's clothing sections. *Id.* ¶¶ 122-24.[24]

Title III's general rule prohibits public accommodations from discriminating against individuals because of their disabilities. 42 U.S.C. § 12182(a). More specifically, Title III requires public accommodations to provide "[g]oods, services, facilities, privileges, advantages, and accommodations . . . in the most integrated setting appropriate . . . ," 42 U.S.C. §

---

[24] Because this claim is essentially an assertion that Macy's does not sell enough of something it need not sell it at all, it also fails under the precedent as set forth above.

12182(b)(1)(B), and prohibits places of public accommodation from providing people with disabilities with services, facilities, privileges, advantages, or accommodations that are "not equal to", or are "different or separate" from those provided to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii)-(iii).[25] In other words, "Title III requires all places of public accommodation to have access to the physical environment of the accommodation." *Cornilles v. Regal Cinemas, Inc.*, No. 00-173-AS, 2002 WL 31440885, at *2 (D. Or. Jan. 3, 2002).

Anderson's first challenge is as to the location of the plus-sized women's clothing department within Macy's stores. Plaintiff alleges in a conclusory fashion that the "placement of the plus sized department is inconvenient" and that it is "more difficult to reach in that it is much farther from main entrances." Am. Compl. ¶¶ 110, 113, 115. Anderson describes the plus-sized section's placement away from certain departments, including shoes, purses, cosmetics, fragrances, jewelry, and other named sections, and its proximity to bedding, kitchen supplies, public restrooms, and staff lounges as "insulting." *Id.* 102-112, 120.

Anderson does not allege that she was unable to access the plus-sized department because of its location, nor does she allege that she was relegated to shop only in the women's plus-sized clothing section on the basis of her disability. Importantly, it does not appear from what she did plead that she could make any such allegations. Anderson's claims fail because she does not plead (nor can her Amended Complaint, viewed in the most favorable light to her, be construed to plead) that she was denied access to any goods or services that Defendants provide to non-disabled customers anywhere in their stores. *Gonzales v. H.E. Butt Grocery Co.*, 226 F. App'x 342, 344 (5th Cir. 2007) (dismissing Title III claim because defendant did not deny access to its goods or services); *McNeil v. Time Ins. Co.*, 205 F.3d 179, 186 (5th Cir. 2000) ("how can an

---

[25] "Providing services in the most integrated setting is a fundamental principle of the ADA." H.R. Rep. 101–485, pt. 2, at 102 (1990), *reprinted* in 1990 U.S.C.C.A.N. 303, 385.

owner, etc., deny the full and equal enjoyment of the goods or services that he offers? By denying access to, or otherwise interfering with, the use of the goods or services that the business offers."); *Camarillo v. Carrols Corp.*, 518 F.3d 153, 157 (2d Cir. 2008) (plaintiff "cannot experience 'full and equal enjoyment' of defendants' services if she is unable to access the list of the services available to her."); *Cornilles*, 2002 WL 31440885, at *2 (Title III requires places of public accommodation to provide access to their goods and services). Defendants' placement of the plus-sized clothing department may have denied Anderson the ability to peruse and then purchase such clothing at what she would define as the most preferable spots within a Macy's store, but Plaintiff was not deprived of generalized access to all of Defendants' merchandise in any manner that Congress identified to be violative of the ADA.

However, Plaintiff also alleges in a more truncated fashion that the "aisles are narrower" in the Defendants' plus-sized women's clothing departments. Am. Compl. ¶ 121. More specifically, Anderson asserts that the aisles in the "average departments are four to five feet wide" but the "aisles in the plus sized departments are often no more than two feet wide." *Id.* She claims that for people who are disabled in a way which causes or contributes to increased weight or height[26] "the narrower aisles are particularly problematic." *Id.* According to 42 U.S.C. § 12182(b)(2)(A)(iv), discrimination includes "a failure to remove architectural barriers, and communication barriers that are structural in nature . . . where such removal is readily achievable."[27] Thus, Title III of the ADA requires places of public accommodation to provide

---

[26] The Court is at a complete loss to understand how a shopper's increased height has anything to do with narrower aisles, and Plaintiff (who does not claim that she is exceptionally tall) does nothing to fill this logical gap.

[27] "As to Section 12182(b)(2)(A)(iv), Congress was explicit: 'The section may require the removal of physical barriers, *including those created by the arrangement or location of. . . movable structures [such]* as furniture, equipment and *display racks.* For example, a restaurant may need to rearrange tables and chairs or *a department store may need to adjust its layout of display racks* and shelves.'" *Colo. Cross-Disability Coal. v. Too (Del.), Inc.*, 344 F. Supp. 2d 707, 710-11 (D. Colo. 2004) (quoting S. Rep. No. 116, 101st Cong., 1st Sess., at 66 (1989); H.R.

accessible paths between movable racks to the extent that it is "readily achievable"[28] to do so. *Colo. Cross-Disability Coal. v. Too (Del.), Inc.*, 344 F. Supp. 2d 707, 714 (D. Colo. 2004).[29] This rule is generally applied in wheelchair cases, but it is apparent to the Court that it may also apply to cases in which a disabled person's access to goods or services is impeded because their body frame is wider as a result of obesity caused by an underlying physiological disorder. Considering this claim in the light most favorable to Plaintiff, it is not implausible that a more modest width of the aisles in a plus-size clothing area would deny the full and equal enjoyment of the goods or services to individuals that are disabled due to their physiological obesity. Anderson therefore sufficiently alleges (at the pleading stage) ADA Title III discrimination with regard to the width of aisles within the women's plus-size clothing department, at least enough to overcome a Motion to Dismiss.

---

Rep. No. 485, 101st Cong., 2nd Sess., pt. 2, at 110, *reprinted in* 1990 U.S.C.C.A.N. 303, 393 ("H.R. Rep. No. 485(III)")).

[28] *See* 28 C.F.R. § 36.104, which provides:

Readily achievable means easily accomplishable and able to be carried out without much difficulty or expense. In determining whether an action is readily achievable factors to be considered include--

(1) The nature and cost of the action needed under this part;

(2) The overall financial resources of the site or sites involved in the action; the number of persons employed at the site; the effect on expenses and resources; legitimate safety requirements that are necessary for safe operation, including crime prevention measures; or the impact otherwise of the action upon the operation of the site;

(3) The geographic separateness, and the administrative or fiscal relationship of the site or sites in question to any parent corporation or entity;

(4) If applicable, the overall financial resources of any parent corporation or entity; the overall size of the parent corporation or entity with respect to the number of its employees; the number, type, and location of its facilities; and

(5) If applicable, the type of operation or operations of any parent corporation or entity, including the composition, structure, and functions of the workforce of the parent corporation or entity.

[29] *See* 28 C.F.R. § 36.304(b) ("Examples of steps to remove barriers include, but are not limited to, the following actions-- . . . (4) Rearranging tables, chairs, vending machines, display racks, and other furniture."); 28 C.F.R. § 36.304(c)(2) ("a public accommodation should take measures to provide access to those areas of a place of public accommodation where goods and services are made available to the public. These measures include, for example, adjusting the layout of display racks."). The Regulations note, however, that "[t]he rearrangement of temporary or movable structures, such as furniture, equipment, and display racks is not readily achievable to the extent that it results in a significant loss of selling or serving space." 28 C.F.R. § 36.304(f).

Anderson then goes on to claim that Macy's provided a "different or separate" benefit as to plus-size clothing in violation of 42 U.S.C. § 12182(b)(1)(A)(iii), and that the stores did not provide goods and services "in the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B).[30] According to the Supreme Court, the "most integrated setting" is defined as "a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible." *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 592 (1999) (quoting 28 CFR pt. 35, App. A, p. 450 (1998)[31]). However, Plaintiff does not allege that she was not able to interact with non-disabled persons in the Macy's stores, or even that only similarly disabled persons shop in the plus-sized clothing department.[32] Both disabled and non-disabled individuals may shop for and buy plus-sized clothing, just as both obese and non-obese persons may shop for and buy plus-sized clothing.[33] Consequently, disabled persons necessarily shop alongside non-disabled persons both within the plus-sized clothing section as well as in other departments, and Anderson does not allege that she has been denied an opportunity to access any other areas within the involved stores.

Finally, Plaintiff's argument that Defendants violate Title III of the ADA because the selection of plus-sized clothing at Macy's stores is smaller than other clothing departments also fails to state a legally cognizable claim. As noted above, Title III of the ADA does not require places of public accommodation to "alter the nature or mix of goods that the public

---

[30] 28 C.F.R. § 36 app. C ("The ADA recognizes that the provision of goods and services in an integrated manner is a fundamental tenet of nondiscrimination on the basis of disability. Providing segregated accommodations and services relegates persons with disabilities to the status of second-class citizens.").

[31] This language is now located in 28 C.F.R. pt. 35, app. B. Under 42 U.S.C. § 12134, the Attorney General "shall promulgate regulations" to implement Title II of the ADA. These regulations are listed at 28 C.F.R. 35 *et seq.*

[32] Nor can her Amended Complaint be read to allege such things, even under the most liberal construction.

[33] Such as for gifts to plus-sized friends or relatives.

accommodation has typically provided." *Ford*, 145 F.3d at 613; *see also PGA Tour*, 532 U.S. at 698.[34] Thus, the allegation that Defendants' smaller selection of plus-sized clothing violates the ADA is also dismissed with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, Macy's Motion to Dismiss for lack of standing is granted, without prejudice. Plaintiff shall have 30 days from the date of this Court's Order to file an Amended Complaint setting forth in detail the factual basis, if any, for Anderson's individual standing to assert her one remaining claim related to the width of the aisles in the plus-sized women's clothing section, and as consistent with this Opinion. Pursuant to 28 U.S.C. § 1915(a), all of Anderson's ADA claims are dismissed with prejudice other than that claim alleging that the aisles in Macy's "plus-sized" women's clothing department are materially narrower in a manner violative of Title III of the ADA. Finally, all claims for monetary relief are dismissed with prejudice.

An appropriate order will issue.[35]

Mark R. Hornak
United States District Judge

Dated: May 2, 2013
cc: All counsel of record
　　Christina Anderson, *pro se*

---

[34] Anderson also does not allege that Defendants refused to order special goods at her request. *See* 28 C.F.R. § 36.307(b) ("A public accommodation shall order accessible or special goods at the request of an individual with disabilities, if, in the normal course of its operation, it makes special orders on request for unstocked goods, and if the accessible or special goods can be obtained from a supplier with whom the public accommodation customarily does business.").

[35] Because the Court grants Defendants' Motion to Dismiss, Defendants' Motion to Stay Discovery will be denied as moot.